UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60976-CIV-ROSENBAUM-HUNT

SAMARI ROLLE, Individually,

    Plaintiff,

v.

BRANCH BANKING AND TRUST COMPANY
as successor to BANK ATLANTIC,

    Defendants.

_____/

### PLAINTIFF, SAMARI ROLLE'S RESPONSE TO DEFENDANT, BRANCH BANKING AND TRUST COMPANY'S, STATEMENT OF MATERIAL FACTS

Plaintiff, Samari Rolle, by and through his undersigned counsel, and pursuant to Southern District of Florida Local Rule 56.1, hereby files and serves this Response to Branch Banking and Trust Company, as successor to BankAtlantic ("BankAtlantic") Statement of Material Facts in support of its Motion for Summary Judgment:

1.    Uncontroverted.  Plaintiff is a former National Football Player and that he hired Jeffrey Rubin ("Rubin"); however, Plaintiff did not hire Pro Sports.  Specifically, Rubin was a licensed broker with various investment agencies and he also owned Pro Sports, a concierge service company to athletes.

2.    As stated in Material Fact No. 1, the relationship between Plaintiff and Rubin did not begin until September, 2001.  As such, it is impossible for the purported authorization to have been executed by Plaintiff and as of March, 2001.

3.    It is uncontroverted that Plaintiff hired Rubin to provide concierge services.

4.    It is controverted as to whether Pro Sports, as an entity, had full access to Plaintiff's accounts.  As stated in Plaintiff's deposition, and above, Jeff Rubin set up the Bill Pay account and Plaintiff conversed with Rubin about his account.

5.    Uncontroverted.

6.    Uncontroverted.

7.    Uncontroverted.

8.    Controverted.  Plaintiff, at all material times, was under the impression that once

he made a phone call to Jeff Rubin for his home repair services or travel arranges that Jeff Rubin, individually, would arrange the same. It was not until this litigation that Plaintiff was made aware that Jeff Rubin was potentially arranging for Pro Sports' employees to perform the services specified by Plaintiff to Rubin.

  9. Controverted. Plaintiff at all material times directed his funds to be handled and managed by Rubin, not Pro Sports.

  10. Controverted. Plaintiff did not receive all his statements when he retrieved boxes from the Pro Sports headquarters as such it is disputed whether all the statements were delivered to Pro Sports headquarters as of October, 2001. Additionally, Plaintiff would ask Rubin to review his statements and would be given a printout of his combined statements. At that time Plaintiff believed that to be an accurate reflection of his account balances and what Rubin obtained from the related entities where Plaintiff had deposited his money.

  11. Controverted. Defendant relies on Plaintiff's "authentication" during his deposition. However, Plaintiff during his deposition could not authenticate each signature for the numerous documents given. Moreover, Plaintiff has repeatedly alleged that while a signature may appear to be his true signature such signature is merely a copy and paste signature from a previously executed document. Importantly, during Plaintiff's termination of Rubin and his receipt of documents from Pro Sports' headquarters he received a document titled "How to forge a signature". This document has lead Plaintiff and undersigned to believe that the documents bearing Plaintiff's signature are often not his signature.

  12. Uncontroverted that Plaintiff used his account.

  13. Controverted. Plaintiff was not aware of such allegation until this litigation and as such contests the validity of this incident and asserts it is merely a continuation of the "cover up" Defendant and Rubin engaged in with Pro Sports' clients' accounts.

  14. Controverted. Plaintiff was unaware of this account and has never authorized Erick Carter to serve as a Power of Attorney.

  15. Uncontroverted.

  16. Uncontroverted.

  17. Controverted. Defendant relies on Plaintiff's "authentication" during his deposition. However, Plaintiff during his deposition could not authenticate each signature for the numerous documents given. Moreover, Plaintiff has repeatedly alleged that while a signature

may appear to be his true signature such signature is merely a copy and paste signature from a previously executed document. Importantly, during Plaintiff's termination of Rubin and his receipt of documents from Pro Sports' headquarters he received a document titled "How to Forge a Signature". This document has lead Plaintiff and undersigned to believe that the documents bearing Plaintiff's signature are often not his signature.

18. Uncontroverted.

19. Uncontroverted.

20. Uncontroverted.

21. Controverted. Plaintiff agreed to invest $2 million dollars in two installments.

22. Controverted. Plaintiff authorized transactions in two separate installments for a total of $2 million dollars. Above, Defendant states there are 6 various installments totaling $2.625 Million dollars.

23. Controverted. Plaintiff exclusively gave access to Rubin to have control over his finances and not Pro Sports.

24. Controverted. Plaintiff did not know Broward Energy was a tax credit scheme when he initially made the investment.

25. Uncontroverted.

26. Uncontroverted.

27. Controverted. Plaintiff was unaware of receiving any dividends from his Country Crossing investment.

28. Uncontroverted.

29. Controverted. Plaintiff did not thoroughly review his financial information with Mr. Pettus and Ms. Dawkins when he retrieved the boxes from Pro Sports. Further, Mr. Rolle did not have any opportunity to review Powers of Attorney, all Signature Cards, fax requests and convenient withdrawal slips.

30. Uncontroverted.

31. Uncontroverted.

32. Controverted. Plaintiff did not and still does not have his complete BankAtlantic statements for his accounts from 2001-2010.

33. Uncontroverted.

34. Uncontroverted.

CASE NO. 13-60976-CIV-RSR

35. Uncontroverted.

36. Uncontroverted.

37. Controverted. Plaintiff sent BankAtlantic a letter on February 15, 2013, requesting his complete bank file. BankAtlantic refused to produce these documents absent Court Order.

Dated: May 12, 2014.

    Respectfully submitted,

    **s/ Kadisha D. Phelps**
    Kadisha D. Phelps, Esquire
    Florida Bar No. 033635
    Kadisha@broekerlaw.com
    **SWEETAPPLE, BROEKER & VARKAS, P.L.**
    44 W. Flagler Street, Suite 1500
    Miami, Florida 33130
    Tel.: (305) 374-5623
    Fax: (305) 358-1023
    *Attorneys for Samari Rolle, Plaintiff*

CASE NO. 13-60976-CIV-RSR

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail and e-mail to all parties who are not on the list to receive e-mail notification/service for this case on this 12th day of May, 2014.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A).*

**s/ Kadisha D. Phelps**
Kadisha D. Phelps, Esquire
Florida Bar No. 033635

## SERVICE LIST

GRAY ROBINSON, P.A.
David S. Hendrix, Esq.
Florida Bar No. 827053
David.Hendrix@gray-robinson.com
Mark D. Schellhase, Esq.
Florida Bar No. 57103
Mark.Schellhase@gray-robinson.com
401 E. Jackson Street (33602)
Suite 2700
Post Office Box 3324
Tampa, Florida 33601-3324
Phone: 813-273-5000
Fax: 813-273-5145
*Attorneys for BB&T*

GRAY ROBINSON, P.A.
Alexandra de Alejo, Esq.
Florida Bar No. 43108
Alexandra.Dealejo@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
Phone: 305-416-6880
Fax: 305-416-6887
*Attorneys for BB&T*