UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-60976-CIV-GAYLES-TURNOFF

SAMARI ROLLE, Individually,

    Plaintiff,

v.

BRANCH BANKING AND TRUST COMPANY
as successor to BANK ATLANTIC,

    Defendants.
_____/

## PLAINTIFF'S, SAMARI ROLLE, RESPONSE TO BRANCH BANKING AND TRUST COMPANY'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, SAMARI ROLLE ("Plaintiff" and/or "Mr. Rolle"), by and through undersigned counsel, hereby files his Response to Defendant's, BRANCH BANKING & TRUST COMPANY, as successor to Bank Atlantic ("BB&T," "Defendant" "BankAtlantic" and/or "Bank"), Motion for Judgment on Partial Findings and Memorandum of Law in Support pursuant to Federal Rules of Civil Procedure 52(c), and in support thereof states:

### I.    FACTUAL BACKGROUND

In Plaintiff's prima facie case during a non-jury trial, he introduced exhibits and witness testimony to support his claims for Negligence and Aiding and Abetting, as asserted in his Second Amended Complaint [D.E. 164] pursuant to Florida law.

    **A. Negligence**

In support of Mr. Rolle's negligence claim, he introduced exhibits Plaintiff's Exhibit 215 and Plaintiff's Exhibit 218, which were identified as Bank Atlantic's 2001 and 2006 Disclosure Statement and Depositor's Agreements, which establish BankAtlantic's written policies and procedures for the years that personal checking accounts were opened at BankAtlantic on Mr.

Rolle's behalf.  These Bank documents also establish the "duty" BankAtlantic owed its customers during the relevant periods for which Mr. Rolle asserts that personal checking accounts were negligently opened in violation of the Bank's written policies.  Plaintiff also introduced Defendant's Exhibit 8, which is a BankAtlantic internal account opening policy from 1998-2002. This specific policy was also violated when Mr. Rolle's account was opened in September 2001 without the necessary Power of Attorney documents.

Plaintiff introduced Exhibits 222, 225, 223, 224 as examples of incomplete, inconsistent and therefore legally insufficient Power of Attorney documents that were maintained for the first personal checking account opened on Mr. Rolle's behalf in September 2001.  These legally unenforceable documents demonstrate a breach of the duty of care by the Bank and demonstrate how BankAtlantic did not act commercially reasonably when opening Mr. Rolle's account.

Plaintiff introduced Exhibits 4 and 5 which is a Personal Signature Card and Pin Issuance Maintenance Form that contained a forgery of Mr. Rolle's signature and prove that an account was opened on Mr. Rolle's behalf in October 2006 without his knowledge, consent, and/or authorization.  These documents further demonstrate BankAtlantic's breach of care to its accountholder and its failure to act commercially reasonably when it opened an account without Mr. Rolle's knowledge and/or consent.

Plaintiff introduced Plaintiff's Exhibit 212 as BankAtlantic's "Know Your Customer Policy" between 1998 and 2010.  This document establishes the duty BankAtlantic had to Mr. Rolle pursuant to the federal Bank Secrecy Act.  Defendant introduced Exhibit 274 known as BankAtlantic's "Know Your Customer" document for Mr. Rolle.  *See*, [Defendant's Exhibit 274]. This document also demonstrate that BankAtlantic breached its duty of care and to act commercially reasonably because Mr. Rolle's "Know Your Customer" information contains

inaccurate personal information and the Bank allowed wire transfers that were beyond Mr. Rolle's normal or usual wire activity pursuant to Defendant's Exhibit 274.

Plaintiff introduced Exhibits 82 and 87 that support the fact that BankAtlantic established an online wire transfer mechanism called "CashLink" that allowed three (3) Pro Sports Financial employees to wire up to One (1) Million Dollars from Mr. Rolle's personal checking account and these same employees would confirm that these large wires were allegedly authorized by Mr. Rolle. These documents satisfy the causation element of Negligence. The CashLink wire transfer option allowed three (3) Pro Sports employees full access to Mr. Rolle's account and the ability to wire millions from his personal checking account without any regulation or the appropriate security measures to detect unauthorized suspicious activity.

On March 1, 2011, Bank Atlantic became aware of the inconsistent and legally unenforceable documents affiliated with Mr. Rolle's accounts and still did not disclose the violations to him. *See*, Plaintiff's Exhibit 149.

All of the damages that Plaintiff suffered have been introduced through his bank account statements that demonstrate all of the unauthorized bank activity, including but not limited to wires to an illegal investment named Country Crossing. See, Defendant's Exhibit 275.

### B.  Aiding and Abetting

Plaintiff introduced Plaintiff's Exhibit 98 to demonstrate that as of March 10, 2008, BankAtlantic, via a branch manager and later the Director of Sports and Entertainment, Mr. Philip Fitzpatrick, had "actual knowledge" that Mr. Jeffery Rubin, President of Pro Sports Financial, requested a loan from BankAtlantic for his construction project in Alabama. Pursuant to Plaintiff's Exhibit 98, Mr. Fitzpatrick knew that gambling was forbidden in Alabama as early as March 2008, and knew that some of the funds for the investment were coming from BankAtlantic accounts held

by NFL players.  Mr. Fitzpatrick never informed the BankAtlantic accountholders of all of the relevant information related to the Country Crossing investment that was maintained by the Bank since March 2008.   The Bank declined to offer Mr. Rubin a loan for this risky, unsuitable, illegal investment.  Further, Mr. Fitzpatrick continued to meet with Mr. Rubin and his employees once a month during this time period.

On February 24, 2011, BankAtlantic performed an Enhanced Due Diligence investigation on Mr. Jeff Rubin, Mr. Ronnie Gilley, the developer of Country Crossing, and Miami Pro Group, the investment company that was formed in order to facilitate the investment into Country Crossing by a group of NFL players, knew that Mr. Rolle needed money for living expenses, and knew that some of the NFL players were receiving payments back.[1]  *See*, Plaintiff's Exhibit 152. At this point, pursuant to Florida law, BankAtlantic had a duty to inform Mr. Rolle of the information it received from an internal investigation but, instead, substantially assisted Mr. Rubin by failing to inform Mr. Rolle about the information it had acquired from its EDD internal investigation. Therefore, BankAtlantic aided and abetted Mr. Rubin's tortious conduct pursuant to Florida law.  Further, in March 2011, BankAtlantic became aware of the unenforceable documents associated with Mr. Rolle's account and still did not inform him on the discrepancies.  *See*, Plaintiff's Exhibit 149.

On June 1, 2011, BankAtlantic became aware that Pro Sports Financial became unstable after the Country Crossing investment, that Pro Sports Financial was dissolving and that Mr. Rolle was suing Mr. Rubin for bad investment advice.  *See*, Plaintiff's Exhibit 99.  Although, BankAtlantic maintained this information it still concealed same from Mr. Rolle when it had a

---

[1] Those payments back to the NFL players appear to part of a Ponzi scheme.

duty to Mr. Rolle to disclose it.  BankAtlantic substantially assisted Mr. Rubin with the Country Crossing investment by setting up all of his clients on CashLink with a One Million Dollar wire maximum in order to wire funds into the Country Crossing investment.  *See*, Plaintiff's Exhibit 82, 87.

Thus, Plaintiff has introduced sufficient evidence that he has satisfied the elements of Aiding and Abetting pursuant to Florida law.

The exhibits and the trial testimony of the Plaintiff, former Pro Sports Financial employees, and former BankAtlantic employees further support Plaintiff's prima facie case for Negligence and Aiding and Abetting and overcome any Motion for Judgment on Partial Findings as articulated by the Defendant's oral motion at the close of Plaintiff's case.

## II.   MEMORANDUM OF LAW

### A.  Negligence

Defendant's argument in its Motion for Judgment on Partial Findings is that Mr. Rolle cannot maintain a claim for Negligence because he cannot demonstrate that BankAtlantic owed any duty to him as an account holder to investigate his investments.  In addition, BankAtlantic argues that Mr. Rolle's claims are preempted by the UCC and are therefore time barred by the Statute of Repose.  Both of these arguments have previously been litigated and rejected by this Court.

Defendant made these exact arguments in its Motion to Dismiss and subsequent Motions for Summary Judgment.  The Honorable Judge Rosenbaum ruled that Mr. Rolle's common law claims were not preempted by the UCC because he asserts that the account was negligently opened and therefore has a claim based on common law.  *See*, [D.E. 161]. This Court relied on *Gilson v. TD Bank, 10-20535-CIV, 2011 WL 294447 (S.D. Fla. Jan. 27, 2011)* for this point of law and

*Gilson* remains the prevailing law out of the Southern District. Judge Huck ruled in the *Gilson* case that the Plaintiff's negligence claim centers in the Bank's alleged negligent and *reckless conduct with regard to the manner in which it opened accounts*. The Plaintiffs in *Gilson* provided evidence that the bank deviated from its standard account opening procedures with how it opened the account. Judge Huck held that because the crux of Plaintiff's negligence claim is the bank's lack of care during the account opening, not solely wire transfers, the negligence claim did not create rights, duties and liabilities inconsistent with those stated n Article 4A, which governs only wire transfers. *Id*. At 10. This Court has subsequently dismissed these arguments by denying Defendant's Motion to Dismiss and Motion for Summary Judgment. *See*, [D.E. 212, 299].

Under Florida law, generally, a cause of action accrues, and the statute of limitations begins to run, on the date the *last element* constituting the cause of action occurred. Also, under Florida law, *accrual of fraud* claims is delayed for limitation purposes, until the Plaintiff either knows or should know that the last element of the cause of action occurred. See, *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp.2d 1311, 1320 (2013). Plaintiff argues that the last unauthorized transaction occurred in July 2009 when the final unauthorized wire was sent from his BankAtlantic account to Ronnie Gilley properties for the Country Crossing project. Mr. Rolle filed his compliant in March 2013 which is within the four year statute of limitations; therefore, his negligence claim is not time barred. Mr. Rolle did not become aware of the account opening until discovery was conducted in this case and did not become aware of the unauthorized wire activity until, at earliest, December 2010 when he retrieved his bank statements from 2008-2010, which is still within the four year statute of limitations. More importantly, Mr. Rolle did not become aware if Mr. Rubin's fraud until he initiated his FINRA litigation in 2011. Therefore, Mr. Rolle's claims as asserted are not time barred pursuant to the UCC, Statute of Repose, or the applicable Statute of Limitations.

### B. Aiding & Abetting

The exact level of knowledge necessary for civil aiding and abetting liability is flexible and must be decided on a case by case basis. For the purposes if establishing aiding and abetting liability, requisite intent and knowledge may be shown by *circumstantial evidence*. Although, ordinarily, a bank does not have an obligation to investigate or question its customer's facially legal transactions, a bank is not immune from civil aiding and abetting claims, and to the extent that its knowledge of the primary party's tortious conduct can be proven, either by direct or circumstantial evidence, liability will attach if the other elements are present. An alleged aider and abettor need not know all of the details of the primary party's scheme for civil liability to attach. See, *Aetna Cas. And Suc. Co. v. Leahey Const. Co*., 219 F.3d 519 citing *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1012 (11th Cir. 1985). A person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party has *general awareness* that his role was part of an *overall activity that is improper*, and if the accused aider-abettor knowingly and substantially assisted the violation. *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985). In discussing the "general awareness" element, the court noted that the surrounding circumstances and expectation of a violation *must usually be inferred*. General knowledge could be shown by circumstantial evidence or by reckless conduct.

BankAtlantic had actual knowledge of the illegality of Country Crossing as early as March 2008, conducted an Enhanced Due Diligence ("EDD") in February 2011, conducted an audit in March 2011, and became aware of Mr. Rolle's lawsuit in June 2011 against the underlying tortfeasor, Mr. Rubin, for bad investment advice. *See*, Plaintiff's Exhibit 98, 152, 149 and 99. Therefore, Mr. Rolle introduced evidence that BankAtlantic had *actual knowledge* of the

investment and has introduced circumstantial evidence of knowledge of the illegality of Country Crossing and the dismantling of Pro Sports Financial relationship with its clients for bad investment advice.

Substantial assistance means affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling breach to occur. See, *Lesti v. Wells Fargo Bank, N.A*. BankAtlantic affirmatively assisted Mr. Rubin by setting him up with Cash Link, an online wire transfer mechanism that allowed him and three (3) Pro Sports employees access to wire up to One Million Dollars without proper regulations or security. *See*, Plaintiff's Exhibit 82 and 87.

BankAtlantic helped to conceal the breach by never informing Mr. Rolle of Cash Link, never informing Mr. Rolle of the due diligence it performed on the Country Crossing investment in February 2011, failing to inform Mr. Rolle that he had inconsistent, unenforceable legal documents associated with his personal checking accounts, failing to inform Mr. Rolle that it had knowledge that he was asserting a claim against Mr. Rubin for bad investment advice, and failing to assist Mr. Rolle in gathering information and alerting him of the wires that were sent from his account to the various investments associated with Mr. Rubin and is affiliated companies. *See*, Plaintiff's Exhibit 149 and 99.

### C. Set Off

In its arguments for Motion for Judgment on Partial Findings, BankAtlantic seeks to apply Mr. Rolle's settlement payments and the alleged re-payments he received from the Ponzi scheme, to the overall damages he asserts in his Second Amended Complaint. The Southern District in *Coquina Investments v. Rothstein*, 2011 WL 4971923 ruled this argument is improper and set-off cannot be applied until post-judgment. Under Florida law, set-off is not an affirmative defense to be considered by the jury, but is a determination to be made by the court *after* the verdict is

rendered.  *Id*. at 15. Sufficient evidence has been introduced by trial testimony or by documentation that establishes Plaintiff's claims for Negligence and Aiding and Abetting pursuant to Florida law and therefore Defendant's Motion for Judgment on Partial Findings should be denied as a matter of law.

**WHEREFORE**, Plaintiff requests that this Court enter its Order denying Motion for Judgment on Partial Findings, together with any other relief this Court deems just and equitable.

Dated: May 18, 2015.

        Respectfully submitted,

        **s/ Kadisha D. Phelps**
        Kadisha D. Phelps, Esquire
        Florida Bar No. 033635
        Kadisha@broekerlaw.com
        **SWEETAPPLE, BROEKER & VARKAS, P.L.**
        44 W. Flagler Street, Suite 1500
        Miami, Florida 33130
        Tel.: (305) 374-5623/Fax: (305) 358-1023
        *Attorneys for Samari Rolle, Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via Regular U.S. Mail and e-mail to all parties who are not on the list to receive e-mail notification/service for this case on this 18th day of May, 2015.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A).*

**s/ Kadisha D. Phelps**
Kadisha D. Phelps, Esquire
Florida Bar No. 033635

## SERVICE LIST

GRAY ROBINSON, P.A.
David S. Hendrix, Esq.
Florida Bar No. 827053
David.Hendrix@gray-robinson.com
Mark D. Schellhase, Esq.
Florida Bar No. 57103
Mark.Schellhase@gray-robinson.com
401 E. Jackson Street (33602)
Suite 2700
Post Office Box 3324
Tampa, Florida 33601-3324
Phone: 813-273-5000
Fax: 813-273-5145
*Attorneys for BB&T*

GRAY ROBINSON, P.A.
Alexandra de Alejo, Esq.
Florida Bar No. 43108
Alexandra.Dealejo@gray-robinson.com
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
Phone: 305-416-6880
Fax: 305-416-6887
*Attorneys for BB&T*